IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM BLASI | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PEN ARGYL AREA SCHOOL DISTRICT, | : | No. 12-2810 |
| | : | |
|     Defendant. | : | |

## M E M O R A N D U M

**STENGEL, J.**                                                                                                 December 5, 2013

      This is a Title VII and age discrimination suit brought by the plaintiff, a white male over 40 who is a member of a mixed race family. He alleges that the defendant's failure to hire him as a middle school sports coach entitles him to relief. The defendant filed a motion to dismiss for failure to state a claim upon which relief can be granted. For the foregoing reasons, I will grant the defendant's motion and dismiss the action.

### I.    BACKGROUND

      Plaintiff William Blasi is a 52-year-old white male who, according to his complaint, is married to an Asian ethnic Chinese woman. They have seven mixed race children, some of whom attend schools in Defendant Pen Argyl Area School District (PAASD).[1] He claims the defendant services an almost entirely white population.[2]

---

[1] This suit is not the first Mr. Blasi has filed against Pen Argyl. Previously, he sued the district for alleged violations of his constitutional rights, and those of his sons, after both were reprimanded for not following the district's athletic code and spectator guidelines. In this complaint, the plaintiff fails to acknowledge the egregious and boorish behavior in which he engaged, which eventually warranted his being banned from his sons' basketball games. I previously dismissed those allegations as having no merit, which the Third Circuit recently affirmed. See Blasi v.

1

In April 2008, the plaintiff spoke on the phone with the defendant's Athletic Director Dwight Repsher about his interest in being hired as the middle school boys' basketball coach. However, he was never interviewed nor hired for the position. Mr. Blasi claims that he was discriminated against because of his marriage to an Asian woman and his age, on three separate occasions: 1) when the defendant hired Jovanni "Geo" Pagan for the middle school boys basketball position in the fall of 2008; 2) when the defendant hired five assistant baseball coaches in the spring of 2009; and 3) when the defendant hired Matt Young as the middle school boys basketball coach in fall of 2009.[3] According to the plaintiff, this alleged discrimination was a "conscious course of conduct to discriminate against families with children of mixed race white and Far East Asian Heritage."[4]  Mr. Pagan was a white male under 30 who was married to a white woman.[5]

---

Pen Argyl Area School District, No. 10-6814,  2011 WL 4528313 (E.D.Pa. Sept. 30, 2011)(Stengel, J.); affirmed 512 Fed. Appx. 173 (3d Cir. 2013)(unpublished).

[2] The plaintiff also alleges that "Pennsylvania, for its racial demographics, has one of the lowest percentage of mixed race marriages and lowest percentages of mixed race children in the USA." Am. Compl., Doc. No. 9, at ¶ 31.

[3] The plaintiff contends that the defendant knew his mixed race sons were going to try-out for the middle school boys basketball team when it decided to hire Mr. Pagan and Mr. Young, which he claims further bolsters his discrimination claim. He also alleges that Mr. Young encouraged the other white boys on the team to assault and hurt his two older sons and that he "fostered an atmosphere of white entitlement in various white boy members of the PAASD Boys middle school team." Am. Compl., Doc. No. 9 at ¶ 52.

[4] The plaintiff relates the alleged discriminatory acts he and his family experienced to those of the Paek sisters, who he indicates were barred in 2006 from attending the schools in PAASD. The plaintiff, however, offers no other information about the Paek sisters, what the discrimination against them entailed, or how it was connected to this case.

[5] Though the plaintiff does not indicate that the hiring of the *assistant* basketball coaches during the 2008-2009 season was a discriminatory act, the plaintiff indicates in his amended complaint that these coaches were all white males under 30 who were not in mixed race marriages.

The assistant baseball coaches and Mr. Young were also white males under 30 who were not from mixed race families.

The plaintiff indicates that he was never advised that these positions were open, though he had expressed an interest in employment as a coach with the defendant.[6] The defendant's hiring practice for all non-head coaching positions was to advertise via word of mouth or by community communications. These positions were not advertised in print media, on television, or online. The plaintiff claims this practice is intended to ensure that members of mixed race families, specifically members of white/Far East Asian families, will not be employed in these positions.

The plaintiff asserts that he is more qualified than Mr. Pagan and Mr. Young because of his life experience, understanding of the development of middle school-aged males, basketball experience, education, and teaching experience.[7] He also claims he is more qualified than the assistant baseball coaches for the reasons stated above along with the fact he has prior baseball coaching experience.

---

[6] The plaintiff indicates that the defendant was again made aware of his interest in coaching in early 2009 via his notifying PAASD that he was going to file an EEOC complaint against them for hiring Mr. Pagan. See Am. Compl., Doc. No. 9 at ¶¶ 49-50.

[7] He bases this claim on the fact that he has a post-graduate level degree, has raised middle school boys, received an education certificate from New York state in middle school social studies, previously taught middle school in New York City, has coached his own children in basketball, and has self-educated himself on basketball coaching.

He also indicated in his PHRC complaint that he had experience coaching a group of high school students in New York City in an academic competition and coached soccer for grades one and two while living in New York. He admits that he never played organized high school or college basketball and only began playing the sport after college. See Doc. No. 10, Ex. 1 at 4 & Ex. 2 at 2. He contends that Mr. Pagan and Mr. Young had none of these credentials.

Subsequent to the alleged discriminatory acts, the plaintiff filed charges with the Equal Opportunity Employment Commission (EEOC).[8] The plaintiff received his right to sue letters on February 21, 2012 and June 12, 2012 and commenced this suit shortly thereafter.[9]

The plaintiff alleges that the hiring of others in the above-mentioned positions, instead of the plaintiff, constitutes direct discrimination against him as a member of a mixed race family and/or are acts of retaliation for his complaining about discrimination against his children by the Wind Gap Athletic Association—the feeder program for the defendant's basketball program.[10] He seeks both damages and equitable relief under Title VII and the Age Discrimination in Employment Act (ADEA).[11]

---

[8] The plaintiff indicates he filed these charges on or about April 24, 2009 (EEOC no. 530-2009-02668) and May 6, 2010 (EEOC no. 17F20116063). Am. Compl., Doc. No. 9, at ¶ 3.

[9] The plaintiff filed suit on May 21, 2012 based on the first right to sue letter. He later requested that he amend his complaint to include the second right to sue letter, which was permitted. His amended complaint was filed on January 24, 2013. See Docs. No. 1, 3, 8, 9.

[10] It is not clear from the pleadings what the exact relationship between the Wind Gap Area Athletic Association (WGAAA) and the defendant are. The plaintiff states in his amended complaint that the WGAAA is a nonprofit that in 2006 and 2007 used the defendant's facilities for practice and games.

In January 2008, the plaintiff complained in a letter faxed to the defendant about the "competence and reckless endangerment" of Coach "Geo" Pagan, who was serving as coach for his 10-year-old son's basketball team in the WGAAA. These offensive actions took place in December 2006. Though the plaintiff indicates Coach Pagan displayed this behavior towards both his son and the other 10-year-olds on the team, the plaintiff claims this behavior was pretext for discrimination against his son as being of mixed race. The plaintiff also sent another letter to the "Defendant agents, servants and employees" on October 7, 8, and 14, 2008 regarding the WGAAA discrimination.

The plaintiff also alleges that he had "a contract to provide basketball program services for [his] two older boys." Am. Compl., Doc. No. 9, at ¶ 13. It is unclear with whom he had this contract and how that contract relates to this retaliation claim.

[11] The plaintiff is asking that the court: 1) declare the defendant's policy of advertising for positions via word of mouth or through community communications to be discriminatory and unconstitutional; 2) enjoin the defendant from using this practice of advertising in the future; 3) compel the defendant to take corrective action by hiring the

4

## II.     STANDARD OF REVIEW[12]

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted examines the legal sufficiency of the complaint.[13]  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The factual allegations must be sufficient to make the claim for relief more than just speculative. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff.  Id.; see also D.P. Enters. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

The Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all of the facts upon which he bases his claim.  Conley, 355 U.S. at 47.  Rather, the Rules require a "short and plain statement" of the claim that will give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  Id.  The "complaint must allege facts suggestive of [the proscribed] conduct."  Twombly, 550 U.S. at 564.  Neither

---

defendant as an assistant boys basketball coach; 4) award the plaintiff $300,000 in compensatory damages, back pay, and punitive damages along with attorneys' fees  (though plaintiff is representing himself pro se) and interest.

[12] The facts are gleaned from the amended complaint and the extrinsic documents upon which it is based. See GSC Partners, CDO Fund v. Washington, 368 F.3d 228, 236 (3d Cir. 2004). For the purposes of this motion, they are presented in the light most favorable to the plaintiff, as the non-moving party, and are accepted as true with all reasonable inferences drawn in his favor.

[13] In deciding a motion to dismiss, the court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record.  See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  The court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. Id.

"bald assertions" nor "vague and conclusory allegations" are accepted as true. See Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997); Sterling v. Southeastern Pennsylvania Transp. Auth., 897 F. Supp. 893 (E.D. Pa. 1995). The claim must contain enough factual matters to suggest the required elements of the claim or to "raise a reasonable expectation that discovery will reveal evidence of" those elements. Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556).

In deciding a motion to dismiss under Rule 12(b)(6), district courts must accept all well-pled facts as true but may disregard legal conclusions. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Courts can consider "the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Lum v. Bank of Am., 361 F.3d 217, 222 (3d Cir. N.J. 2004) (citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

## III.  DISCUSSION[14]

### a. Plaintiff's Claims Under Title VII[15]

---

[14] This court has jurisdiction over the Title VII and ADEA claims pursuant to 28 U.S.C. § 1331 and 1343. It has supplemental jurisdiction over the PHRA related state law claim pursuant to 28 U.S.C. § 1367(a).

[15] The plaintiff cites three counts (i.e. causes of action) in his amended complaint. These counts are organized factually, according to the alleged discriminatory incidents, with Count I being the hiring of Mr. Pagan, Count II being the hiring of the assistant baseball coaches, and Count III being the hiring of Mr. Young. Since the plaintiff seems to allege that each incident violated Title VII, ADEA, and PHRA, I will discuss the violations by statute, not by count, because the legal analysis for each incident is the same under each statute.

Title VII makes it unlawful for an employer to discriminate against an individual "with respect to his compensation, terms, conditions, or privileges of employment" based on the person's race, color, religion, sex, or ethnicity. 42 U.S.C. § 2000e-2. To establish a prima facie case of discrimination under Title VII, a plaintiff must allege that: 1) he is a member of a protected class; 2) he is qualified for the position; 3) he applied and was rejected for the position; and 4) that employer filled the position with a similarly situated person from a different class. Barber v. CSX Distribution Services, 68 F.3d 694, 698 (3d Cir. 1995).

The plaintiff alleges both acts of direct discrimination under Title VII and acts of retaliation under Title VII. I will address both potential claims in turn.[16]

### i. Direct Discrimination as Being a Member of a Mixed Race Family

The plaintiff alleges that he was discriminated against because he is married to an ethnic Chinese woman and his children are mixed race. In order to establish the first prong of a prima facie case of discrimination under Title VII, the plaintiff must show that he is a member of a protected class. Protected classes under Title VII include gender, race, religion, color, or national origin. See 42 U.S.C. § 2000e-2.

---

[16] The defendant argues the plaintiff's Title VII and PHRA claims should be dismissed as untimely. The defendant claims that the plaintiff did not file his first EEOC claim until October 8, 2009, past the August 24, 2009 deadline (i.e. 300 days after Mr. Pagan's hiring on October 28, 2008). The plaintiff responded by providing a certified mail receipt showing he had mailed the EEOC complaint, which was being duly filed, on April 23, 2009. In addition, he provided the receipt for his second EEOC complaint, which was filed on May 6, 2010 within 300 days of Mr. Young's hiring. See Doc. No. 11 at 20-21. The EEOC right to sue letters also do not indicate the complaints were untimely. See Doc. No. 9 at 14-15. While it does seem that there was a lag in processing the plaintiff's complaints, it is not clear from the pleadings that this was the fault of the plaintiff. Viewing these facts in the light most favorable to the plaintiff, I do not find that the claims should be dismissed because they are time-barred, as the defendant argues.

The plaintiff alleges that he was discriminated against, not because of his own race, but because of the race or his wife and children. He is basing his discrimination claims on his family status. Viewing the allegations in the light most-favorable to the plaintiff, it is possible that he was treated differently from white males who did not have mixed race families. However, discrimination based on family status alone is not actionable under Title VII. Adamson v. Multi Community Diversified Services, Inc., 514 F.3d 1136, 1148-49 (10th Cir. 2008).[17] Simply stated, Mr. Blasi is not a member of a protected class for Title VII purposes. Because he is not a member of a protected class, he cannot establish a prima facie case of direct discrimination under Title VII. His claims under this legal theory have no merit.

### ii. Retaliation for Complaints Made Against His Mixed Race Sons

The plaintiff alleges that he was not hired because he made complaints to the defendant about his sons' treatment as members of a basketball team in the Wind Gap Area Athletic Association (WGAAA). He claims that his being overlooked for the position was retaliation for his previous complaints.

In order to make out a prima facie case of retaliation, a plaintiff must show that: 1) the employee or potential employee engaged in a protected employment activity; 2) the employer took an adverse employment action after or around the same time as the employee's protected activity; and 3) a causal link exists between the employee's

---

[17] The parties do not cite legal cases which support or contradict this point. No cases in this circuit appear to be directly on point in addressing this claim.

protected activity and the employer's adverse action. <u>Farrell v. Planters Lifesavers Co.</u>, 206 F.3d 271, 279 (3d Cir. 2000).[18]

Under the first prong, an employer may not discriminate against an employee or employment applicant for his or her opposition to any practice made unlawful under Title VII. 42 U.S.C. § 2000e-2. Such protected activities include making a Title VII complaint, testifying in an EEOC hearing, or assisting with an employment discrimination investigation. <u>See id</u>. The "activity" giving rise to his "retaliation" is not activity protected under Title VII. He claims his complaining to the defendant about alleged discrimination against his children in the WGAAA was the reason he was not hired by the defendant.[19] His complaints had nothing to do with any discrimination in any workplace. Several years ago, Mr. Blasi's son played in the WGAAA youth basketball program, and Mr. Blasi complained about the way his son was treated. His complaints had nothing to do with his workplace. Mr. Blasi cannot make out a prima facie case for retaliation and this claim will be dismissed.

### b. Plaintiff's Claims Under the ADEA

---

[18] Typically retaliation claims are made when an employee is subsequently fired, transferred, or has her employment compensation reduced. However, §2000e-3, which discusses protected activities, indicates that both employees and applicants for employment can be considered under this section.

[19] WGAAA is not named as a defendant in this case. The plaintiff indicates that he complained to the defendant about alleged discrimination by the WGAAA; however, the only link between WGAAA and the defendant, which the plaintiff alleges, is that WGAAA used defendant's facilities for games and practices. Beyond that, it is unclear from the pleadings what the relationship between WGAAA and the defendant is and whether the defendant would even have the authority or ability to respond to the defendant's complaints. For this reason, there would likely be problems in establishing the third prong, from what is shown in the pleadings.

Title VII claims and ADEA claims are analyzed under the same rubric. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 330 (3d Cir. 1995). To make out a prima facie case of age discrimination under the ADEA, the plaintiff must allege: 1) he is a member of the protected class (i.e. is at least 40 years of age); 2) he applied for a position for which he is qualified; 3) he has suffered an adverse employment action; and 4) a sufficiently younger employee was hired as to permit a reasonable inference of age discrimination. Barber v. CSX Distribution Servs., 68 F.3d 694, 698 (3d Cir. 1995).

From the facts pled, it is clear that the plaintiff is a member of the protected class, in that he was around 48 years old when the hirings in question occurred. It is also clear that those coaches hired for the coaching positions were in their 20s. What is unclear is whether the plaintiff actually applied for the positions in question.[20]

The failure to formally apply to a job opening will not bar a Title VII plaintiff from establishing a prima facie claim of discrimination. However, the plaintiff must show that he made every reasonable attempt to convey his interest in the job to the employer.[21]

---

[20] From the pleadings, it is unclear whether the plaintiff was qualified for the coaching positions. The plaintiff indicates that he is qualified because he has a post-graduate degree, has raised middle school boys, received an education certificate from New York state in middle school social studies, previously taught middle school in New York City, has coached his own children in basketball, and has self-educated himself on basketball coaching.

He also coached a high school academic team and soccer for first and second graders for one season. The plaintiff admits he did not play on an organized basketball team while in high school or college. The defendant does not offer arguments as to why the plaintiff would not be qualified nor offers criteria as to what makes a candidate qualified. Because the plaintiff does not establish that he actually applied for the position, as I will explain, I need not reach a determination on the issue of whether the plaintiff is actually qualified for the position.

[21] In failure to hire cases, a plaintiff may also show that he was deterred from applying by the employer's discriminatory practices or he believed that a formal application would be futile though he had a real and genuine

Lula v. Network Appliance, Inc., 245 F. App'x 149, 152 (3d Cir. 2007). See also Equal Employment Opportunity Commission (EEOC) v. Metal Service Company, 892 F.2d 341, 348 (3d Cir. 1990); Menta v. Community College of Beaver County, 428 F.Supp.2d 365, 376-77 (W.D.Pa. 2006) (holding that a prima facie claim could not be made when the employer was not aware the plaintiff had an interest in the position) (citation omitted).[22]

The plaintiff indicates that he expressed an interest in being the middle school boys basketball coach to the defendant's Athletic Director during a phone conversation six months prior to the hiring of Mr. Pagan. He did not again express an interest in the position to the defendant.[23] The plaintiff also does not indicate in his complaint that he applied for or even expressed an interest in the assistant boys baseball coaching position to anyone.[24] From the facts pled, the plaintiff has failed to establish that he has made

---

interest in the position. Lula, 245 F. App'x at 152. See also Newark Branch, N.A.A.C.P. v. Town of Harrison, N.J., 907 F.2d 1408, 1415 (3d Cir. 1990). Nothing in the record suggest that the plaintiff was deterred from putting in an application with the defendant or that a formal application would have been futile. Instead, he simply indicates that his expression of interest in April should be considered his application.

[22] This standard applies in both failure to promote and failure to hire cases. EEOC, 892 F.2d at 348-49.

[23] The plaintiff claims that his EEOC filing regarding the hiring of Coach Pagan was another time when he expressed an interest in the boys basketball coaching position. While it is questionable whether such a filing could even be considered an adequate communication of his interest to an employer, even viewing it as such would not help the plaintiff. Communicating his interest in the position only twice over a year and a half span falls short of the regular follow up required. See Lula, 245 F. App'x at 153 (discussing EEOC v. Metal Service)(finding that plaintiffs who have not formally applied for positions at least must have "periodically checked on applications they had submitted" or tried to apply to the employer formally in order to meet the application element of the prima facie case).

[24] The plaintiff argues that there is no real difference in coaching baseball and basketball. Since he believes he was qualified for the basketball position, he argues that his expression of interest in the basketball coaching position should have made him a candidate for consideration for the baseball coaching positions. This is a stretch. Basketball and baseball are different sports. It is reasonable to think—as the defendant argues—that a coach at the middle school level should have some knowledge of the sport in order to properly coach. As such, I do not consider the

11

every reasonable attempt to convey his interest in the coaching positions as required.[25] Mr. Blasi is unable to make out a prima facie case of discrimination under the ADEA, and I will, therefore, dismiss his claims.[26]

### c. Plaintiff's Claims Under PHRA

The remaining claims under the PHRA are founded in state law only.[27] When a district court has dismissed all claims over which it had original jurisdiction, the court has discretion to "decline to exercise supplemental jurisdiction" over state law claims with respect to which it initially asserted jurisdiction. 28 U.S.C. § 1367(c)(3).[28] In deciding

---

plaintiff's expression of interest in the basketball position as an expression of interest in the baseball coaching positions.

[25] The plaintiff claims that the hiring process for the coaching positions was done via word of mouth and community communications and is, thereby, discriminatory. Relaxation of the application element of the prima facie case *may* be appropriate when the hiring process itself is suspect or potentially discriminatory. See EEOC, 892 F.2d at 349-50. The plaintiff offers no other evidence of discrimination. Instead, he simply asserts that the use of community communications and word-of-mouth advertising are blatant attempts at discrimination. This assertion alone is not enough to raise a reasonable inference that advertising for middle school coaching positions in community communications and by word-of-mouth is discriminatory. See Paul v. F.W. Woolworth Co., 809 F.Supp. 1155, 1162-63 (D. Del. Dec. 30, 1992)(discussing how a word-of-mouth hiring process alone without other evidence of discrimination does not require a reasonable inference under EEOC). Thereby, I will not find that the application element of his prima facie case should be relaxed.

[26] Because the plaintiff has failed to establish the second prong, I have no need to reach analysis under the third prong. However, it should be noted that whether the plaintiff has suffered an adverse employment action goes hand-in-hand with whether the plaintiff was considered to have actually applied for the positions in question, such that his non-hiring would have been considered a rejection of his application. Without an actual application, it would be hard to then find an adverse employment action.

[27] Though not raised by the parties, I will briefly note that the Eleventh Amendment should not bar jurisdiction of this court hearing the PHRA claim against the defendant because a school district is not necessarily an arm of the state to which sovereign immunity extends. See Mt. Healthy City School Dist. Bd. Of Educ. v. Doyle, 429 U.S. 274, 280-81 (1977)(explaining when a school district is considered an arm of the state). PHRA claims against school districts have proceeded in district courts in this circuit in Pennsylvania without being barred by the Eleventh Amendment. See, e.g. Kishel v. Valley View School Dist., No. 3:08–1585, 2010 WL 4537016 (M.D.Pa. Aug. 17, 2010); Smith v. Central Dauphin School Dist., 419 F.Supp.2d 639 (M.D. Pa. 2005); Schumacher v. Souderton Area School Dist., No. CIV. A. 99-1515, 2000 WL 72047 (E.D.Pa. Jan. 21, 2000).

[28] District courts may decline to exercise supplemental jurisdiction if:
 (1) the claim raises a novel or complex issue of State law,

12

whether to exercise supplemental jurisdiction, a federal court should consider how the values of "economy, convenience, fairness, and comity" would be best served. City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 172-73 (1997). In line with these principles, I will exercise supplemental jurisdiction over the remaining state law claim since the legal analysis under the PHRA and the federal claims is essentially identical.[29] See, e.g., Weston v. Pennsylvania, 251 F.3d 420, 426 n. 3 (3d Cir. 2001)(explaining how Title VII and PHRA analysis are similar); Hussein v. UPMC Mercy Hosp., 466 Fed.Appx. 108, 111-12 (3d Cir. 2012).

The PHRA provides that employers shall not discriminate on the basis of "race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability." 43 P.S. § 955(a). Courts interpret the PHRA consistent with Title VII. See Weston, 251 F.3d at 426 n. 3. The prima facie case for employment discrimination necessary for an employment discrimination claim under the PHRA is the same as under Title VII and ADEA. See, e.g. Fogleman v. Mercy Hosp., 283 F.3d 561, 567 (3d Cir. 2002); Dici v. Commonwealth of Pennsylvania, 91 F.3d 542, 552 (3d Cir. 1996).

---

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.
28 U.S.C. § 1367(c). District courts may also decline supplemental jurisdiction if abstention doctrines apply. City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 173-74 (1997). I find none of these factors warrant declining supplemental jurisdiction in this case.

[29] I also find that deciding this claim in this court at this time best serves the principles of judicial economy, convenience, and fairness since this court is already familiar with the merits of the plaintiff's claim and very little would be gained in having the case remanded to state court, thereby prolonging its adjudication.

The plaintiff has failed to establish that he is member of a protected class under Title VII. The same would be true under the PHRA: discrimination based on "familial status" is not actionable under the PHRA. See 43 P.S. § 955(a). Additionally, as with the plaintiff's age discrimination claim, the plaintiff has not made every reasonable attempt to convey his interest in the coaching positions in order for these attempts to constitute the "applied for" requirement of the age discrimination claim. Since the plaintiff's allegations fail to establish a prima facie case, the plaintiff's PHRA claim is clearly inadequate. Therefore, I will dismiss the plaintiff's PHRA claims.

## IV.   CONCLUSION

For the reasons explained above, I will grant the defendant's motion to dismiss the amended complaint in its entirety.[30]

An appropriate Order follows.

---

[30] Because I am dismissing all of the claims against the defendant, I have no reason to determine whether punitive damages are inapplicable, as argued by the defendant.