## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM BLASI** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **PEN ARGYL AREA SCHOOL** | : | **No. 12-2810** |
| **DISTRICT,** | : | |
| **Defendant.** | : | |

**M E M O R A N D U M**

Stengel, J.                                          September 19th, 2014

        This is a motion for the award of attorney's fees by the prevailing defendant, Pen

Argyl Area School District (PAASD), under Title VII of the 1964 Civil Rights Act and

the Age Discrimination in Employment Act (ADEA). William Blasi brought this *pro se*

suit against PAASD under Title VII and the ADEA for alleged discrimination after not

being hired as a basketball or baseball coach. The defendant submitted a motion to

dismiss for failure to state a claim, which I granted. The defendant then filed this motion

for the award of attorney's fees based on plaintiff's history of failed complaints and suits

against the defendant. For the reasons below, I will deny this motion.

**I.      BACKGROUND**

        Plaintiff William Blasi is a 53-year-old white male, former attorney, and former

educator.[1] He is married to a woman of Chinese descent with whom he has seven

---

[1] Mr. Blasi was a practicing attorney for 10 years, with 7 years trial experience, before having his license suspended. Blasi v. New York City Bd. of Educ., 00-CV-5320 RRM MDG, 2012 WL 3307227, at *8 n. 5 (E.D.N.Y. Mar. 12, 2012), report & recommendation adopted, 00-CV-5320, 2012 WL 3307346 (E.D.N.Y. Aug. 12, 2012), aff'd, 544 F. App'x 10 (2d Cir. Oct. 25, 2013).

"mixed-race children."[2] Mr. Blasi has filed a number of lawsuits against PAASD. In November 2010, the plaintiff first brought suit against defendant PAASD, alleging discrimination and retaliation by the school basketball team against his mixed-race sons, as well as a First Amendment claim from his being banned from his sons' basketball games.[3] I granted the defendant's motion to dismiss.[4] The plaintiff filed three subsequent complaints against PAASD with the Office of Civil Rights (OCR) alleging racial discrimination and retaliation.[5] OCR dismissed two complaints as meritless; the most recent complaint is still pending investigation.[6]

Mr. Blasi has a history of abusing the legal system. In 1997, the Appellate Division of the Supreme Court of New York suspended his license to practice law because, among other things, he engaged in a "clear abuse of the legal system in order to harass or maliciously injure others in an effort to settle personal disputes" and failed to

---

Mr. Blasi's license to teach in New York was officially terminated in 2002 after five charges against him for misconduct and neglecting his duties were sustained. The effective date of his termination was retroactively amended to 2000. Id. at *4-5.

[2] Am. Compl., Doc. No. 3 at 3.

[3] The plaintiff was banned after sending numerous threatening emails to the coaching staff of the basketball team in which he criticized coaching methods and made degrading comments about the other middle school players on the team. See Blasi v. Pen Argyl Area Sch. Dist., CIV.A. 10-6814, 2011 WL 4528313, at *1-2 (E.D. Pa. Sept. 30, 2011), aff'd 512 F. App'x 173 (3d Cir. Jan. 30, 2013).

[4] Id. at *1.

[5] Def. Br. in Supp. of Pet. For Atty's Fees, Doc. No. 14 at 5.

[6] Id. The defendant further asserts that Mr. Blasi filed a total of three complaints, aside from the November 2010 law suit, against PAASD with the OCR. On November 3, 2010, he filed a complaint with the OCR generally alleging that the District discriminated and retaliated against his sons based on race. Def. Pet. For Att'y's Fees, Doc. No. 14, Ex. 4. On November 23, 2011, he filed another complain with the OCR alleging that the District discriminated and retaliated against his son because he was not allowed to try out for the boys JV basketball team. Id., Ex. 5. Finally, on May 23, 2012, Mr. Blasi filed a complaint with the OCR once again alleging that the District discriminated against his son based on the fact that his family if mixed race. Id., Ex. 6.

pay a previous $1,000 sanction for abusing the legal system.[7] <u>Matter of Blasi</u>, 231 A.D.2d 257, 259-60 (N.Y. App. Div. 1997).

In 2000 and 2003, the plaintiff brought two separate actions against the New York City Department of Education (DOE) claiming employment discrimination and retaliation under Title VII, as well as a violation of his First Amendment right to freedom of speech.[8] <u>Blasi v. New York City Bd. of Educ.</u>, 00-CV-5320 RRM MDG, 2012 WL 3307227, at *1 (E.D.N.Y. Mar. 12, 2012), <u>report & recommendation adopted,</u> 00-CV-5320, 2012 WL 3307346, at *5 (E.D.N.Y. Aug. 12, 2012), <u>aff'd</u>, 544 F. App'x 10 (2d Cir. Oct. 25, 2013). In the first action, the court ultimately denied Mr. Blasi leave to amend his complaint after he ignored numerous extensions and warnings to file an amended complaint and provide the defense with a copy. <u>Blasi v. New York City Bd. of Educ.</u>, 2012 WL 3307227, at *5. Mr. Blasi brought the second suit in 2003, and the two cases

---

[7] Mr. Blasi was suspended from practicing law for five years due to frivolous suits he brought against his neighbors. His first frivolous suit arose from a disagreement with his neighbor, Mrs. Gonzalez, during which Mr. Blasi threatened to damage Mrs. Gonzalez's home and made lewd and suggestive remarks to her minor female children. <u>Matter of Blasi</u>, 231 A.D.2d 257, 258 (N.Y. App. Div. 1997). The Gonzalezes subsequently called the police during additional confrontations with Mr. Blasi. <u>Id.</u> at 259. Based on statements they made to police, Mr. Blasi sued the Gonzalezes for $1,640,000 for defamation and emotional distress and placed a <i>lis pendens</i> on the Gonzalezes' property, claiming adverse possession of a portion of it. <u>Id.</u> at 258. The court dismissed all of Mr. Blasi's causes of action, canceled the <i>lis pendens</i>, denied him leave to amend his complaint, and denied his motion for renewal and reargument. <u>Id.</u> at 258-59. The justice in the case imposed a $1,000 sanction on Mr. Blasi, noting that his repetitious and utterly meritless motions were primarily undertaken to delay enforcement of the court's decision. <u>Id.</u> at 259.

Mr. Blasi filed a second frivolous suit against another neighbor, Joseph Johnson, seeking $1,600,000. <u>Id.</u> The complaint falsely alleged that Mr. Blasi had not been appointed to the Assigned Counsel Family Court Panel because of phone calls and statements that Mr. Johnson made to police. <u>Id.</u> Mr. Blasi took no further action to prosecute this claim after receiving an answer to his summons. <u>Id.</u>

[8] The plaintiff claimed he was discriminated against for being a white Christian male after the school fired him, declined to renew his probationary teaching license and placed him on the Ineligible/Inquiry list which prevented the plaintiff from being rehired. <u>Blasi v. New York City Bd. of Educ.</u>, 00-CV-5320 RRM MDG, 2012 WL 3307227, at *4 (E.D.N.Y. Mar. 12, 2012), <u>report & recommendation adopted,</u> 00-CV-5320, 2012 WL 3307346 (E.D.N.Y. Aug. 12, 2012), <u>aff'd</u>, 544 F. App'x 10 (2d Cir. 2013).The DOE asserted that the actions taken against the plaintiff were based on poor performance reviews, a failure to perform his duties, unprofessional attitude and remarks, and for the corporal punishment of a student. <u>Id.</u> at 18-22.

were consolidated in 2006.[9] Id. at *6. On August 12, 2012, the court granted summary judgment for the defendants, adopting a 34-page Report and Recommendation of the magistrate judge that clearly outlined the standards required for plaintiff's claims to succeed. Id. The Second Circuit Court of Appeals affirmed the judgment in 2013, finding the plaintiff's remaining arguments meritless and noted that his assertion that the district court judge should have recused herself was "patently frivolous." Blasi v. New York City Bd. of Educ., 544 Fed.Appx. 10, 12 (2d Cir. Oct. 25, 2013).

Shortly before the district court's decision in his Title VII case against the New York City Board of Education, Mr. Blasi commenced this Title VII and ADEA action against PAASD on May 21, 2012. Blasi v. Pen Argyl Area Sch. Dist., CIV.A. 12-2810, 2013 WL 6388493, at *1 (E.D. Pa. Dec. 5, 2013). He alleged that the defendant did not hire him as the school's basketball or baseball coach because of his age and marriage to an Asian woman and, instead, hired young white males whose wives were also white. I granted the defendant's motion to dismiss the amended complaint in its entirety on December 5, 2013. The defendant filed this timely petition for award of attorney's fees on December 19, 2013 under both Title VII and the ADEA.[10]

The plaintiff has not responded to the defendant's petition for attorney's fees but has since filed a separate complaint against the Borough of Pen Argyl, with an

---

[9] The first action (Blasi I) also listed the City of New York, the Chancellor of the DOE, the principal and assistant principle of the school he was fired from, and the Superintendent. Blasi v. New York City Bd. of Educ., 2012 WL 3307227, at *1.  The second action (Blasi II) named the same defendants, with the addition of the principal of a school that did not hire him. Id.

[10] The defendant asserts that such a petition for an award of attorney's fees is "pursuant to Fed. R. Civ. P. 54(d)" but does not discuss this Rule any further. Def. Pet. for Atty's Fees, Doc. No. 14 at 1-2.

4

accompanying request to proceed *in forma pauperis*.[11] In his request to proceed *in forma pauperis*, the plaintiff asserts that he has been unemployed since 2004, does not own a car, any real estate, stocks, bonds or money to speak of and is supported by his wife.[12]

## II.    LEGAL STANDARD

In general, under the "American Rule," each party in a case is responsible for paying their own litigation expenses. Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247 (1975). One exception is "when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons," in which case the court may award fees to the prevailing party at its discretion. Id. at 258-59 (citation and quotation marks omitted). Fees may also be shifted to the non-prevailing party if there is an express authorization of fee-shifting within the ruling statute. Id. at 260.

## III.   DISCUSSION

The defendant seeks to recover $19,287 for prevailing party attorney's fees under Title VII of the Civil Rights Act of 1964 (Title VII) and the Age Discrimination in Employment Act of 1967 (ADEA). Because Title VII and the ADEA have different standards for the award of attorney's fees, I will address each separately.

### A.  Attorney's Fees Under Title VII

#### i.    Legal Standard for Prevailing Defendants

The enforcement provision of Title VII provides that the prevailing party in an employment discrimination case may be awarded reasonable attorney's fees at the

---

[11] No. 14-cv-1354-LS, E.D.Pa., Req. to Proceed IFP, Doc. No. 1.

[12] Id. at 1.

discretion of the court. 42 U.S.C.A. § 2000e-5(k) (West). Under Title VII's enforcement provision, "a prevailing *plaintiff* ordinarily is to be awarded attorney's fees in all but special circumstances." Christiansburg Garment Co. v. E.E.O.C., 434 U.S. 412, 417 (1978)(emphasis in original). Two main policy reasons justify the routine award of prevailing plaintiff attorney's fees in civil rights cases. First, the plaintiff acts as "a 'private attorney general,' vindicating a policy that Congress considered of the highest priority." Id. at 416. Private suits play a crucial role in the effective operation of Title VII by "accomplishing the desired public objective of eradicating discrimination." Kutska v. California State College, 564 F.2d 108, 110 (3d Cir. 1977). As the Supreme Court explained, prevailing plaintiffs should be routinely awarded fees because "[i]f successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest." Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 402 (1968). Second, when a court awards attorney's fees to a prevailing plaintiff, it is awarding them against a violator of federal law. Christiansburg, 434 U.S. at 420.

While a prevailing plaintiff should ordinarily recover attorney's fees under Title VII, awards of prevailing defendant attorney's fees "are not routine and should be awarded sparingly." E.E.O.C. v. L.B. Foster Co., 123 F.3d 746, 751 (3d Cir. 1997)(quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 503 (3d Cir.1991)(quotation mark omitted). The policy considerations which support the award of prevailing plaintiff attorney's fees are not present in the case of prevailing defendants. Christiansburg, 434 U.S. 412, 418-19. "A prevailing defendant seeking an attorney's fee does not appear

6

before the court cloaked in a mantle of public interest," because generally, no substantial public policy is furthered by a successful defense against a charge of discrimination. U.S. Steel Corp. v. United States, 519 F.2d 359, 364 (3d Cir. 1975). Further, awarding prevailing defendants attorney's fees as a general practice "would work to defeat the goal of effective enforcement of Title VII" by deterring all but the most clear cases from being brought. Kutska, 564 F.2d at 110.

In awarding fees to a prevailing defendant, the court is not awarding fees against a violator of federal law as they are when awarding fees to a prevailing plaintiff. Christiansburg, 434 U.S. at 418. Attorney's fees should be awarded to a prevailing defendant under Title VII only if the court finds that the plaintiff's suit was "frivolous, unreasonable, or without foundation," even if not brought in bad faith.[13] Christiansburg, 434 U.S. at 421. In applying this standard, the court must "resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation."[14] Christiansburg, 434 U.S. at 421-22. In determining "frivolity," the court should also

---

[13] Congress seemingly intended for prevailing defendant attorney's fee awards in order "to deter the bringing of lawsuits without foundation" and to "discourage frivolous suits." Christiansburg, 434 U.S. at 420. Attorney's fees are awarded to prevailing defendants to compensate parties who are forced to defend themselves against claims that are frivolous or without merit. See Doering v. Union County Bd. of Chosen Freeholders, 857 F.2d 191, 193-94 (3d Cir. 1988) (discussing the underlying policies behind various fee-shifting statutes).

[14] The Christiansburg limitations to awarding prevailing defendant attorney's fees apply with "special force" in actions against pro se litigants. Hughes v. Rowe, 449 U.S. 5, 15 (1980). Under Haines v. Kerner, 404 U.S. 519 (1972), pro se plaintiffs have been afforded leniency within the court system to make up for their lack of legal knowledge. Id. at 9. For this reason, attorney's fees should rarely be awarded against pro se plaintiffs because they are often unable to recognize the legal and factual deficiencies in their claims. Id. at 15. However, at the court's discretion, well-educated pro se plaintiffs may be held to a higher standard than that of a lay person. See Kutska, 564 F.2d at 111. As a former attorney and frequent pro se litigant, the plaintiff in the instant case is no stranger to the legal system. Nor is the plaintiff unfamiliar with Title VII actions against schools, as his previous pro se actions in both this state and New York have been almost exclusively discrimination claims. As such, the plaintiff's pro se status is not as much of a consideration as it would be in the case of a person untrained in the law.

consider: 1) whether the plaintiff established a *prima facie* case, 2) whether the defendant offered to settle, and 3) whether the court dismissed the claim before trial. L.B. Foster Co., 123 F.3d at 751. Such considerations are guiding factors, rather than hard and fast rules; determinations of frivolity should be made on a case-by-case basis. Id. (discussing and quoting Sullivan v. Sch. Bd. of Pinellas Cnty., 773 F.2d 1182, 1189 (11th Cir. 1985)).[15]

Additionally, where a plaintiff is found to have brought the claim in bad faith there is an even stronger basis for awarding attorney's fees to a prevailing defendant. Christiansburg, 434 U.S. at 422. Bad faith can be demonstrated by showing either "an ulterior motive, or misconduct such as knowingly using perjured testimony, citing as binding authority overruled or non-binding cases, or otherwise misrepresenting facts or law to the court." Hicks v. Arthur, 891 F. Supp. 213, 215 (E.D. Pa. 1995), aff'd, 91 F.3d 123 (3d Cir. 1996).

### ii.   Application to this Action

The defendant argues that attorney's fees are appropriate because the plaintiff's claim was without foundation and the Foster factors for frivolity weigh in the defense's favor.[16] In a decision dated December 5, 2013, this court dismissed the plaintiff's claims for failing to establish a *prima facie* case of discrimination under Title VII. See Blasi v. Pen Argyl Area Sch. Dist., CIV.A. 12-2810, 2013 WL 6388493. While the school district

---

[15] Typically, findings of frivolity have been upheld in cases where a court granted a defendant's motion for summary judgment because the plaintiffs did not introduce any evidence to support their claims. L.B. Foster Co., 123 F.3d at 751.

[16] Def. Br. in Supp. of Pet. For Att'y's Fees 3, Doc. No. 14 at 5.

received a settlement letter from the plaintiff, it did not respond nor engage in any settlement discussions with the plaintiff.[17] Based on the pleadings, this court dismissed the plaintiff's claims prior to trial by granting the defendant's motion to dismiss. To be sure, the <u>Foster</u> factors weigh heavily in favor of the defense, because the plaintiff failed to establish a *prima facie* case, the defense never offered to settle, and I dismissed the case prior to trial. <u>L.B. Foster Co.</u>, 123 F.3d at 751.

The defendant's brief also suggests that the plaintiff brought this suit not to correct a civil wrong, but rather in retaliation for previous quarrels with PAASD.[18] Bad faith can be demonstrated by a showing of an ulterior motive or that the plaintiff misrepresented facts or law to the court. <u>Hicks</u>, 891 F. Supp. at 215. In the plaintiff's previous case against the defendant, Mr. Blasi brought suit claiming that PAASD had discriminated against his mixed-race sons by banning the plaintiff from his sons' basketball games.[19] I dismissed the claims prior to trial, and the Third Circuit affirmed. See <u>Blasi v. Pen Argyl Area Sch. Dist.</u>, 512 F. App'x 173 (3d Cir. 2013). The plaintiff's settlement request letter in this case contained mostly extraordinary demands of guaranteed playing time for his sons on the basketball team and only briefly mentions his request to be appointed to an

---

[17] <u>Id.</u> at 4.

[18] <u>Id.</u> at 6.

[19] The court concluded that the plaintiff had been banned from the games due to his own inappropriate conduct toward the coaching staff and other middle school basketball players. <u>Blasi v. Pen Argyl Area Sch. Dist.</u>, CIV.A. 10-6814, 2011 WL 4528313 (E.D. Pa. Sept. 30, 2011), <u>aff'd.</u> 512 F. App'x 173 (3d Cir. 2013).

employment position.[20] The defendant also offers the plaintiff's other complaints with the OCR, claiming racial discrimination, as further evidence of harassment.[21]

The plaintiff's settlement request in conjunction with his continued litigation and complaints against the defendant, all of which have been dismissed, provide evidence of bad faith. The plaintiff may have filed the instant claim in an attempt to harass the defendant or as recompense for past litigation losses. In addition, the plaintiff has been sanctioned for frivolous suits in the past. The plaintiff's history of filing similar claims in the past, which were all dismissed before trial, suggests that the plaintiff's claims are not of the sort Congress sought to preserve in enacting the enforcement provision of Title VII. As such, an award of attorney's fees for the prevailing defendant in this case would not conflict with Congress's legislative intent in enacting and enforcing Title VII, with respect to the plaintiff's own claims.

However, I do not believe an award of attorney's fees to the prevailing defendant in this case is warranted. When a statute provides that a fee shifting determination is left to a court's discretion, the Third Circuit has explained that a court's judgment "may be guided by a number of elements, including the public interest in encouraging particular suits, the conduct of the parties and economic considerations." U.S. Steel Corp. v. United States, 519 F.2d 359, 363 (3d Cir. 1975). The court should consider the ability of each party to bear the burden of the costs of litigation and may take the ability of a party to pay into consideration. Kutska, 564 F.2d at 111.

---

[20] Def. Br. in Supp. of Pet. For Att'y's Fees, Doc. No. 14, Ex. 7.

[21] See id., Ex. 4, 5, 6.

The plaintiff claims to have been unemployed for the past ten years and have no assets of his own.[22] He allegedly is dependent on his wife, who also supports their seven children.[23] Due to his alleged indigence, it is unlikely that the plaintiff would be able to pay the defendant's attorney's fees, if granted. An award of attorney's fees is unlikely to elicit the desired deterrent effect. Rather, because the plaintiff is unemployed, is the father of seven children and is supported financially by his wife, an award of fees would serve to do little other than overly burden an already encumbered family, to the benefit of the defendant who is better situated to bear the costs of litigation. See Kutska, 564 F.2d at 111 (determining that a State is better financially situated to bear the burden of litigation costs than a private defendant).[24]

Furthermore, an award of fees in this case may have the undesired effects of "discourage[ing] suits in all but the clearest cases, and inhibit[ing] earnest advocacy on undecided issues." U.S. Steel, 519 F.2d at 364-65. While this plaintiff's claims may not be of the type Congress intended to protect, an award of fees to the defendant in this case may discourage other similarly financially situated litigants from bringing their own meritorious civil rights claims. Such an award would "undercut the efforts of Congress to

---

[22] No. 14-cv-1354-LS, Req. to Proceed IFP, Doc. No. 1. In exercising its discretion of awarding attorney's fees, a court may take judicial notice of any fact "that is not subject to reasonable dispute because it ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). See also Feingold, 516 F. App'x 223 (plaintiff's legal disciplinary history relevant in determining the purpose of the instant action); L.B. Foster Co., 123 F.3d at 752 (history of case relevant in determining whether claim was baseless).

[23] No. 14-cv-1354-LS, Req. to Proceed IFP, Doc. No. 1.

[24] See also Kibbee v. City of Portland, CV-98-675-ST, 2000 WL 1643535 (D. Or. Oct. 12, 2000) (reducing award of costs because of plaintiff's status as a struggling single mother).

promote the vigorous enforcement of the provisions of Title VII." <u>Christiansburg</u>, 434 U.S. at 422.

In cases where the plaintiff is unable to pay attorney's fees, a plaintiff that repeatedly files frivolous claims may be appropriately enjoined from filing future complaints without prior court approval. <u>In re Guyer</u>, MISC. 90-0679, 1990 WL 162131 (E.D. Pa. Oct. 19, 1990). <u>See</u> <u>also</u> <u>In re Hampton</u>, 87-636, 1988 WL 15193 (E.D. Pa. Feb. 23, 1988). Moving forward, I *strongly advise* the plaintiff to carefully consider his future legal actions. Should he continue to bring frivolous actions in bad faith, against this defendant or another, the court in its discretion may enjoin him from filing future complaints without prior leave of the court. Future frivolous lawsuits could lead to an award of fees. At some point, the interest in compensating the defendant for the fees and costs incurred in defending a meritless case will outweigh the concern for promoting vigorous enforcement of Title VII.

Because the purposes of Congress in enacting the fee-shifting provision of Title VII would not be served by a fee award in this case, I will deny the defendant's petition for attorney's fees under Title VII.

### B. Attorney's Fees under the ADEA

#### i. Legal Standard for Prevailing Defendants

The ADEA, by incorporating the provisions of the Fair Labor Standards Act pertaining to attorney's fees, provides that attorney's fees should be paid by the defendant to a prevailing plaintiff in an age discrimination case. 29 U.S.C. § 626(b)(incorporating 29 U.S.C. § 216(b)). It does not, however, explicitly state that attorney's fees can be

awarded to a prevailing defendant. <u>See</u> 29 U.S.C. § 216(b). The Third Circuit has not yet

determined whether, and under what circumstances, attorney's fees can be awarded to a

prevailing defendant under the ADEA. However, each circuit that has addressed this

issue has found that a district court may award prevailing defendant attorney's fees if the

defendant can show that the plaintiff litigated in bad faith, thus falling under the "bad

faith" common law exception to the American Rule.[25] <u>Cesaro v. Thompson Pub. Grp.,</u> 20

F. Supp. 2d 725, 726 (D.N.J. 1998) (citing cases from the 11th, 8th, 4th, 6th, and 1st

Circuits).[26] In a footnote to a published opinion, the Third Circuit implied that it would be

inclined to follow the other courts in requiring a showing of bad faith to award prevailing

defendant's attorney's fees under the ADEA.[27] <u>Wastak v. Lehigh Valley Health Network,</u>

333 F.3d 120, 133 n. 7 (3d Cir. 2003)(citing <u>Turlington v. Atlanta Gas Light Co.,</u> 135

F.3d 1428 (11th Cir. 1998)). Accordingly, districts courts within the Third Circuit have

ruled that under the ADEA, attorney's fees may only be available to a prevailing

defendant upon a finding that the plaintiff litigated vexatiously or in bad faith.[28] <u>Cesaro,</u>

---

[25] Courts have rejected the argument that the ADEA's language implicitly bars awards of attorney's fees to prevailing defendants through the FLSA's language that "fees may be awarded to prevailing plaintiffs" and that had the legislature intended for prevailing defendants to be awarded fees, the statute would have been worded like Title VII's provision allowing courts to award fees to "the prevailing party." <u>See, e.g., E.E.O.C. v. Clay Printing Co.,</u> 13 F.3d 813, 817 (4th Cir. 1994); <u>Turlington v. Atlanta Gas Light Co.,</u> 135 F.3d 1428, 1437 (8th Cir. 1998).

[26] <u>See also E.E.O.C. v. BE & K Engineering Co.,</u> 562 F.Supp.2d 641, 644-45 (D. Del. 2008); <u>Rompola v. Lehigh Valley Hosp.,</u> No. Civ.A.03–2993, 2004 WL 1508533, at *3 (E.D. Pa. Jul. 6, 2004).

[27] In discussing that a fee-shifting arrangement in an enforceable contract is one of the primary common law exceptions to the American Rule, the Third Circuit noted that "there is little reason to believe that in enacting the ADEA Congress intended to abrogate those exceptions." <u>Wastak,</u> 333 F.3d at 133 n. 7, <u>modified and superseded on reh'g on other grounds,</u> 342 F.3d 281 (3d Cir. 2003).

[28] Third Circuit district courts have declined to apply the "frivolous…even without bad faith" standard which governs attorney's fees under Title VII, stating that <u>Christiansburg</u> does not govern the award of attorney's fees to a prevailing defendant under the ADEA. <u>See Cesaro,</u> 20 F. Supp. 2d at 726; <u>BE & K Engineering Co.,</u> 562 F. Supp. 2d at 646.

20 F. Supp. 2d at 726. <u>See also</u> <u>Rompola v. Lehigh Valley Hosp.</u>, CIV.A.03-2993, 2004 WL 1508533, at *3 (E.D. Pa. Jul. 6, 2004); <u>E.E.O.C. v. BE & K Engineering Co.</u>, 562 F. Supp. 2d 641, 645 (D. Del. 2008).

Courts have assessed vexatiousness "within the framework of how carefully the dismissing court reviewed the claims." <u>Deyo v. St. Luke's Hosp. & Health Network</u>, CIV.A. 06-3712, 2010 WL 1632904, at *3 (E.D. Pa. Apr. 19, 2010) (citations omitted).[29] The Third Circuit has defined "bad faith" as "some indication of an intentional advancement of a baseless contention that is made for an ulterior purpose, e.g., harassment or delay."[30] <u>BE & K Engineering Co.</u>, 562 F. Supp. 2d at 646 (quoting <u>Ford v. Temple Hospital</u>, 790 F.2d 342, 347 (3d Cir. 1986))(quotation mark omitted). In such cases, the party seeking attorney's fees "bears a heavy burden in establishing bad faith and the court must exercise this power [to award attorneys' fees] sparingly." <u>BE & K Engineering Co.</u>, 562 F. Supp. 2d at 645 (alteration in original)(quotation marks and citations omitted). "An award should be made only in extraordinary circumstances and requires more than a showing of a weak or legally inadequate case." <u>Id.</u> (citing <u>Randolph Engineering Co. v. Fredenhagen Kommandit-Gesellschaft</u>, 476 F. Supp. 1355, 1361 (W.D. Pa. 1979)).

---

[29] The court in <u>Deyo</u> established this standard for ADEA claims based on cases that discuss awards of prevailing defendant attorney's fees for bad faith claims in a mix of ADEA, Title VII, Federal Employers' Liability Act (FELA), and 42 U.S.C. § 1983 contexts. <u>See</u> <u>Rompola</u>, CIV.A.03-2993, 2004 WL 1508533; <u>Tuthill v. Consol. Rail Corp.</u>, CIV. A. 96-6868, 1998 WL 321245 (E.D. Pa. June 18, 1998); <u>Hughes v. Rowe</u>, 449 U.S. 5 (1980).

[30] Due to a lack of Third Circuit precedent in ADEA cases, district courts have relied on the Third Circuit's definition of "bad faith" in other civil rights contexts. <u>See</u> <u>BE & K Engineering Co.</u>, 562 F. Supp. 2d at 646.

### ii.    Application to This Action

The defendant offers only a short footnote to support its contention that the plaintiff brought his ADEA claim in bad faith.[31] The record itself does not necessarily show that the plaintiff's actions amount to "bad faith" under the ADEA. Although the plaintiff has previously sued the defendant and others for discrimination under Title VII, the plaintiff has never brought a claim under the ADEA against this defendant or others.

While his ADEA claim in this case was dismissed prior to trial for failing to establish a *prima facie* case, this court carefully reviewed the plaintiff's claims and examined the facts alleged to reach its conclusion. See Blasi, CIV.A. 12-2810, 2013 WL 6388493, at *4. Mr. Blasi, a 48-year-old at the time of the incident in dispute, was clearly a member of the class protected by the ADEA, while those hired for the coaching positions were all in their 20s. Id. He was not hired for the position he sought. Id. The plaintiff satisfied three of the four requirements to establish a *prima facie* case under the ADEA, and his case was dismissed because the court found that he had not "made every reasonable attempt to convey his interest in the [coaching] job to the employer." Id. Under these circumstances, it cannot be said that the plaintiff's ADEA claim was baseless. See BE & K Engineering Co., 562 F. Supp. 2d at 646. While I noted above he may have some ulterior motive for bringing his claim, the evidence presented for this action is not enough to meet the heavy burden required for an award of fees. Though his claim may have been "weak or legally inadequate," I cannot say for certain that the plaintiff's ADEA claim was brought in bad faith. See id. at 646-7.

---

[31] Def. Br. in Supp. of Pet. For Att'y's Fees 3, Doc. No. 14 at 2 n. 1.

Because the defendant has failed to meet its burden of establishing that the plaintiff brought his suit under the ADEA in bad faith, I will deny the defendant's petition for attorney's fees under the ADEA.

**IV.    CONCLUSION**

For the foregoing reasons, the defendant's motion for an award of attorney's fees is denied.

An appropriate Order follows.